## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEENAN WOODS,

                     *Plaintiff,*

       v.

ARCONIC CORPORATION, ARCONIC
US LLC, and ARCONIC,

                    *Defendants.*

Case No. _____

## COMPLAINT

### I.    THE PARTIES:

1.    Plaintiff, Keenan Woods, is an adult individual and current citizen and resident of the Commonwealth of Pennsylvania, who currently resides in Lancaster County, Pennsylvania, at 50 Prospect Street, Lancaster, Pennsylvania 17603. Plaintiff, through undersigned counsel, previously indicated to Counsel for Defendants that he would like to file a Motion to Proceed Anonymously requesting leave of Court to file the instant Complaint anonymously as "John Doe," and to redact Plaintiff's home address from the Complaint. Plaintiff's Counsel reached out to Counsel for Defendants requesting concurrence in the same. Counsel for Defendants specifically stated that they do not consent to the requested relief. Plaintiff's Counsel acknowledges that he has previously faced challenges in this Circuit in attempting to ensure that gay litigants are not outed beyond an extent to which they are comfortable simply to pursue litigation involving their rights. Plaintiff respectfully reserves the right to file a Motion to Proceed Anonymously at a future date.

2.    Defendant, Arconic Corporation, was, at all times relevant hereto, a Pennsylvania corporation, and the Plaintiff's employer, with a plant located at 1480 Manheim Pike, Lancaster,

Pennsylvania 17601, believed and averred to be Defendants' principal office located in Lancaster, Pennsylvania.  At all times relevant hereto, Plaintiff was employed and working for Defendants at the plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601.  The plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, was where the alleged discriminatory acts as described more fully herein were committed against Plaintiff.  Plaintiff would have worked for Defendants at the plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, but for the alleged discriminatory practices alleged herein.  Defendant, Arconic Corporation, is believed to have a principal office, and principal place of business, located in the Commonwealth of Pennsylvania, at 201 Isabella Street, Pittsburgh, PA 15212-5872.

3.      Defendant, Arconic US LLC, was, at all times relevant hereto, a Pennsylvania limited liability company, and the Plaintiff's employer, with a plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, believed and averred to be Defendants' principal office located in Lancaster, Pennsylvania.  At all times relevant hereto, Plaintiff was employed and working for Defendants at the plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601.  The plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, was where the alleged discriminatory acts as described more fully herein occurred.  Plaintiff would have worked for Defendants at the plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, but for the alleged discriminatory acts as described more fully herein.  Defendant, Arconic US LLC, is believed and averred to have a principal office, and principal place of business, located in the Commonwealth of Pennsylvania, at 201 Isabella Street, Pittsburgh, Pennsylvania 15212-5872.

4.      Defendant, Arconic, was, at all times relevant hereto, a Pennsylvania corporation, and the Plaintiff's employer, with a plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, believed and averred to be Defendants' principal office located in Lancaster, Pennsylvania.

2

At all times relevant hereto, Plaintiff was employed and working for Defendants at the plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601. The plant at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, was where the alleged discriminatory acts as described more fully herein occurred. Plaintiff would have worked for Defendants at the plant located at 1480 Manheim Pike, Lancaster, Pennsylvania 17601, but for the alleged discrimination. Defendant, Arconic, is believed to have a principal office, and principal place of business, located in the Commonwealth of Pennsylvania, at 201 Isabella Street, Pittsburgh, PA 15212-5872.

5.    At all times relevant hereto, the Defendants are believed and averred to have employed the Plaintiff. Defendants constitute Plaintiff's employer.

## II. JURISDICTION & VENUE:

6.    This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

7.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims as those claims arise out of the same set of operative facts as the federal claims.

8.    This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

9.    Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are "alleged to have been committed" in this judicial district, "the employment records relevant to such practice[s] are maintained and administered" in

this judicial district, and Plaintiff "would have worked" in this judicial district "but for the alleged unlawful employment practice[s]."  42 U.S.C. § 2000e-5(f)(3).

10.    In the alternative, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because Defendants regularly conduct business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.  At all times relevant hereto, Plaintiff was employed by and working for Defendants in this judicial district.

11.    At all times relevant hereto, the Defendants employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

12.    Plaintiff has exhausted all applicable administrative remedies by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC Notice of Right-to-Sue is attached hereto as Exhibit "A."

### III. CLAIMS FOR RELIEF:

**COUNT I:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON SEXUAL ORIENTATION/SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000e(1)(a), *et seq.*
(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)**

13.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

14.    Plaintiff was employed and working for Defendants for approximately two (2), going on three (3), years, or from in or about June 6, 2022 until in or about July 11, 2024, the last date Plaintiff worked, and July 15, 2024, Plaintiff's effective date of termination.  Plaintiff worked to Defendants' satisfaction.

15.     On or about June 16, 2024, a co-employee of Plaintiff named Mr. Jared Wansley, who is not believed or averred to be openly LGBTQ+, subjected Plaintiff to severe harassment based on Plaintiff's sex.  On or about June 16, 2024, Mr. Jared Wansley, subjected Plaintiff to harassment based on sex, sexual orientation, and/or sex stereotyping.  More specifically, Mr. Wansley referred to Plaintiff as a "faggot" (hereinafter "f----t"), and stated for Plaintiff to "move the fucking (hereinafter "f-----g") crane."  Mr. Wansley also, at the same time, made an inappropriate hand gesture which Defendants subsequently characterized as, in Defendants' language, Mr. Wansley "flick[ing] his wrist" at Plaintiff, and "mock[ing] [Plaintiff] for being gay," which Defendants had reviewed on the camera footage.  Plaintiff engaged in protected conduct/activity when he promptly reported the aforementioned occurrence involving Mr. Wansley.  At the relevant time, the Defendants further characterized the alleged occurrence of harassment committed against Plaintiff as warranting alleged discipline or corrective opportunity/opportunities in the form of a Last Chance Agreement, or "L.C.A.," to Mr. Wansley, in lieu of his termination, on account of what Defendants represented was "the severity of the situation" for Mr. Wansley (*i.e.*, in Defendants' language, the "sever[e] nature of the comments, as they have been characterized by Defendants, made to Plaintiff by Mr. Wansley).  *See* a true and correct copy of the alleged "Last Chance Agreement," or "L.C.A.," provided to Mr. Wansley, but which was not provided similarly to Plaintiff prior to Plaintiff's wrongful termination.  The occurrence is alleged to involve sex stereotyping.

16.     It should be noted that the aforementioned occurrence has not been the first time that Mr. Wansley subjected Plaintiff to alleged sexual harassment on the basis of his sexual orientation.  Mr. Wansley had also previously threatened Plaintiff that Mr. Wansley would allegedly "break your ass (hereinafter "a--") in half" referring to Plaintiff.

17.     Defendants elected to provide the aforementioned Last Chance Agreement ("L.C.A.") to one employee, and not the other.  It is alleged that Defendants subjected Plaintiff to disparate treatment and discriminated against him on account of his sexual orientation and/or his sex.

18.     The two (2) documents at issue, the L.C.A. provided to Mr. Wansley, and the document Defendants purport to be an L.C.A. provided to Plaintiff, but which document is not actually an L.C.A., are attached for this Court's consideration as Exhibits "B" and "C" hereto.

19.     The two documents at issue attached hereto as Exhibits "B" and "C" for this Court's consideration are clearly not the same type of document.  However, undersigned counsel is not imputing a misrepresentation to counsel for Defendants, but rather, it is believed the Defendants, and/or a representative on behalf of the Defendants, has misrepresented the fact that the two documents are both Last Chance Agreements, or L.C.A.s, when they both are not, only one is. This is further alleged to be for the purpose of misrepresenting the fact that both employees were provided the same treatment, when they were not, or to be misleading about the fact that both of the employees did not receive the same treatment.  In other words, Defendants are saying the document attached hereto as Exhibit "C" is a Last Chance Agreement, or L.C.A., when it is not. Defendants represented that they provided a Last Chance Agreement, or an L.C.A., to Plaintiff, when they did not.  Defendants are alleged to have not provided corrective opportunities to their employees including to Plaintiff and to other employees uniformly, are alleged to have not provided the same or similar corrective opportunities to Plaintiff and to other employees uniformly, and Defendants treated the comparator differently than Defendants treated the Plaintiff.

20.     Plaintiff further alleges pretext, that the aforementioned alleged representation, or alleged misrepresentation, constitutes pretext, or an inconsistent statement, as the Defendants are

representing that the two documents are the same  in order to try to hide the fact of the disparate treatment, or to attempt to give the impression of similar treatment being given to both of the employees, when actually the two documents are not the same, and the two employees did not receive the same treatment.

21.     The Last Chance Agreement, or "L.C.A.," is alleged to be a document that is given to an employee in lieu of a termination.  Defendants wanted to provide and did provide a Last Chance Agreement, "L.C.A.," to a bigoted individual, but not similarly to Plaintiff.  Defendants wanted to provide and did provide a last chance to a bigoted individual, but not similarly to Plaintiff.  The touchstone for disparate treatment or for discrimination is the fact of two similarly situated individuals being treated differently based on a protected characteristic being the distinction.

22.     Plaintiff wishes to make several additional observations about the two different documents, the two different corrective opportunities, or about what makes them different.  For example, the L.C.A. provided to Mr. Wansley says that it replaces any prior disciplinary notice for the same occurrence, which Plaintiff did not similarly have replaced.  Plaintiff was treated differently by not having the disciplinary notice replaced by the L.C.A.

23.     The L.C.A. further states that the employee subject to the L.C.A. should sign the document, the superintendent (or, it is believed, the supervisor) should sign the document, and also that Human Resources, or a representative of the Human Resources ("HR") department, should sign the document, providing that last chance or opportunity, which was allegedly, upon information and belief, believed and therefore averred, not provided to Plaintiff.

24.     Plaintiff completely denies making a comment to Mr. Wansley that, were the two men not at work, Plaintiff would be capable of "beating [Mr. Wansley's] a--," or any words to that

effect.  Plaintiff contends that a similar comment was actually made by Mr. Wansley on a prior occasion, that Mr. Wansley was going to "break [Plaintiff's] a-- in half," or words to that effect. Plaintiff alleges that Mr. Wansley made the allegation up about Plaintiff because of animus toward Plaintiff on account of his sexual orientation.  Plaintiff did not sign the disciplinary notice provided to him because Plaintiff denied making any such statement.  The point of the L.C.A. in this regard is that it is signed by the employee after discussing it with the employee so they completely understand for when they return. If the L.C.A. is not signed by the employer, then it is believed the employee is terminated.  The point is that this was never done here for Plaintiff which is alleged to be treating two similarly situated employees differently.

25.     On or about July 11, 2024, the same date Plaintiff had returned to work following leave, Plaintiff alleges Defendants were looking for a reason to penalize Plaintiff based on a pretext, in order to set Plaintiff up for termination upon Plaintiff's return.  However, Plaintiff was still never given the same type of corrective opportunity, a Last Chance Agreement, or an "L.C.A.," like Mr. Wansley was prior to Plaintiff's termination.  Instead, Plaintiff received the document attached hereto as Exhibit "C."  More specifically, Defendants allege Plaintiff failed to use the proper personal protective equipment, or "PPE."  Plaintiff denies that he was insubordinate by refusing to wear the requested PPE.  Plaintiff was not being insubordinate, he was explaining that he thought there was a policy that said that certain PPE could be removed if the temperature reached a certain level, and on the date in question, the temperature had reached that level.  Plaintiff further alleges he would not have been terminated on account of allegedly failing to wear the required PPE, the same being denied, but that Defendants pulled from the prior occurrence involving Mr. Wansley, where Plaintiff was discriminated against, to use as part of the reason to justify Plaintiff's termination.  Plaintiff was suspended on or about July 11, 2024, and terminated

on July 15, 2024, and/or that his effective date of termination was July 15, 2024.  Plaintiff further alleges unusually suggestive temporal proximity.

26.    Plaintiff identifies pretext, inconsistent statements, and disparate treatment on account of the fact that Defendants allegedly posted a notice stating that certain PPE, specifically arm guards, could be removed if the temperature reached a certain level.  On the date in question, the temperature had reached that level. Plaintiff's supervisor did not explain the rule correctly to Plaintiff, and Plaintiff alleges his supervisor had discriminatory and/or retaliatory animus against Plaintiff due to his sexual orientation.  Plaintiff further alleges that other similarly situated employees were not treated the same in that they were not targeted for allegedly not wearing the required PPE, or that an occurrence of not wearing the required PPE would not have resulted in their termination, on account of the fact that the aforementioned notice stated that certain PPE could be removed if the temperature reached a certain level, and on the date in question, that the temperature had reached that level.

27.    For the hostile work environment claim, it is alleged Defendants treated Plaintiff differently than they did Mr. Wansley which is alleged to be a form of discrimination in the Defendants' response.  Discriminatory treatment or disparate treatment is not appropriate action in response.  Further, Plaintiff directly challenges Defendants' Position Statement submitted to the Equal Employment Opportunity Commission ("EEOC"), in particular, Defendants' representation to the EEOC that the alleged harassment was not "severe or pervasive," which, while surprising, Plaintiff directly challenges such a conclusion as the harassment was "severe."  Being referred to as a "f----t" at one's place of work is abuse which fundamentally alters the workplace.  In fact, in Defendants' Last Chance Agreement, or "L.C.A.," provided to Mr. Wansley, Defendants even stated to Mr. Wansley, at that time, that the L.C.A. provided to Mr. Wansley was justified "due to

the severit[y]."  Defendants then argued differently to the EEOC that such harassment was not "severe," in the latter circumstance, in order to attempt to secure a dismissal of Plaintiff's case, the point being that Defendants characterized the harassment as being "severe" to Mr. Wansley, admitting as much, but then Defendants said the opposite to the EEOC.  Defendants should also be considered to have waived this argument or to be estopped from making this argument.  Plaintiff further alleges that, on account of the other comments made in addition to the slur at the relevant time, and the discriminatory treatment Plaintiff received from Mr. Wansley, including on a previous occasion, that the harassment was also "pervasive."

28.    Plaintiff lost pay on account of being terminated by Defendants.  Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

29.    Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

30.    Defendants' conduct toward Plaintiff  was in reckless disregard for Plaintiff's protected rights and Defendants are liable to Plaintiff for punitive damages to deter Defendants and future employers from similar misconduct in the future.

31.    Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic Corporation, Arconic US LLC, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received;

compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; for Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT II:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION/SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*(1)(a), *et seq.***
**(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)**

32.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

33.     Defendants wrongfully terminated Plaintiff on or about July 15, 2024.

34.     Plaintiff's sex and/or sexual orientation was a motivating factor in Plaintiff's wrongful discharge.

35.     It is believed and therefore averred that Defendants replaced Plaintiff with an individual who was not openly LGBTQ+, and/or who was outside of Plaintiff's protected class, at all times relevant hereto.

36.     On or about June 16, 2024, a co-employee of Plaintiff named Mr. Jared Wansley, who is not believed or averred to be openly LGBTQ+, subjected Plaintiff to severe harassment based on Plaintiff's sex.  On or about June 16, 2024, Mr. Jared Wansley, subjected Plaintiff to harassment based on sex, sexual orientation, and/or sex stereotyping.  More specifically, Mr. Wansley referred to Plaintiff as a "faggot" (hereinafter "f----t"), and stated for Plaintiff to "move the fucking (hereinafter "f-----g") crane."  Mr. Wansley also, at the same time, made an

inappropriate hand gesture which Defendants subsequently characterized as, in Defendants' language, Mr. Wansley "flick[ing] his wrist" at Plaintiff, and "mock[ing] [Plaintiff] for being gay," which Defendants had reviewed on the camera footage.  Plaintiff engaged in protected conduct/activity when he promptly reported the aforementioned occurrence involving Mr. Wansley.  At the relevant time, the Defendants further characterized the alleged occurrence of harassment committed against Plaintiff as warranting alleged discipline or corrective opportunity/opportunities in the form of a Last Chance Agreement, or "L.C.A.," to Mr. Wansley, in lieu of his termination, on account of what Defendants represented was "the severity of the situation" for Mr. Wansley (*i.e.*, in Defendants' language, the "sever[e]" nature of the comments, as they have been characterized by Defendants, made to Plaintiff by Mr. Wansley).  *See* a true and correct copy of the alleged "Last Chance Agreement," or "L.C.A.," provided to Mr. Wansley, but which was not provided similarly to Plaintiff prior to Plaintiff's wrongful termination.  The occurrence is alleged to involve sex stereotyping.

37.     It should be noted that the aforementioned occurrence has not been the first time that Mr. Wansley subjected Plaintiff to alleged sexual harassment on the basis of his sexual orientation.  Mr. Wansley had also previously threatened Plaintiff that Mr. Wansley would allegedly "break your ass (hereinafter "a--") in half" referring to Plaintiff.

38.     Defendants elected to provide the aforementioned Last Chance Agreement ("L.C.A.") to one employee, and not the other.  It is alleged that Defendants subjected Plaintiff to disparate treatment and discriminated against him on account of his sexual orientation and/or his sex.

39. The two (2) documents at issue, the L.C.A. provided to Mr. Wansley, and the document Defendants purport to be an L.C.A. provided to Plaintiff, but which document is not actually an L.C.A., are attached for this Court's consideration as Exhibits "B" and "C" hereto.

40. The two documents at issue attached hereto as Exhibits "B" and "C" for this Court's consideration are clearly not the same type of document. However, undersigned counsel is not imputing a misrepresentation to counsel for Defendants, but rather, it is believed the Defendants, and/or a representative on behalf of the Defendants, has misrepresented the fact that the two documents are both Last Chance Agreements, or L.C.A.s, when they both are not, only one is. This is further alleged to be for the purpose of misrepresenting the fact that both employees were provided the same treatment, when they were not, or to be misleading about the fact that both of the employees did not receive the same treatment. In other words, Defendants are saying the document attached hereto as Exhibit "C" is a Last Chance Agreement, or L.C.A., when it is not. Defendants represented that they provided a Last Chance Agreement, or an L.C.A., to Plaintiff, when they did not. Defendants are alleged to have not provided corrective opportunities to their employees including to Plaintiff and to other employees uniformly, are alleged to have not provided the same or similar corrective opportunities to Plaintiff and to other employees uniformly, and Defendants treated the comparator differently than Defendants treated the Plaintiff.

41. Plaintiff further alleges pretext, that the aforementioned alleged representation, or alleged misrepresentation, constitutes pretext, or an inconsistent statement, as the Defendants are representing that the two documents are the same in order to try to hide the fact of the disparate treatment, or to attempt to give the impression of similar treatment being given to both of the

employees, when actually the two documents are not the same, and the two employees did not receive the same treatment.

42.    The Last Chance Agreement, or "L.C.A.," is alleged to be a document that is given to an employee in lieu of a termination.  Defendants wanted to provide and did provide a Last Chance Agreement, "L.C.A.," to a bigoted individual, but not similarly to Plaintiff.  Defendants wanted to provide and did provide a last chance to a bigoted individual, but not similarly to Plaintiff.  The touchstone for disparate treatment or for discrimination is the fact of two similarly situated individuals being treated differently based on a protected characteristic being the distinction.

43.    Plaintiff wishes to make several additional observations about the two different documents, the two different corrective opportunities, or about what makes them different.  For example, the L.C.A. provided to Mr. Wansley says that it replaces any prior disciplinary notice for the same occurrence, which Plaintiff did not similarly have replaced.  Plaintiff was treated differently by not having the disciplinary notice replaced by the L.C.A.

44.    The L.C.A. further states that the employee subject to the L.C.A. should sign the document, the superintendent (or, it is believed, the supervisor) should sign the document, and also that Human Resources, or a representative of the Human Resources ("HR") department, should sign the document, providing that last chance or opportunity, which was allegedly, upon information and belief, believed and therefore averred, not provided to Plaintiff.

45.    Plaintiff completely denies making a comment to Mr. Wansley that, were the two men not at work, Plaintiff would be capable of "beating [Mr. Wansley's] a--," or any words to that effect.  Plaintiff contends that a similar comment was actually made by Mr. Wansley on a prior occasion, that Mr. Wansley was going to "break [Plaintiff's] a-- in half," or words to that

effect.  Plaintiff alleges that Mr. Wansley made the allegation up about Plaintiff because of animus toward Plaintiff on account of his sexual orientation.  Plaintiff did not sign the disciplinary notice provided to him because Plaintiff denied making any such statement.  The point of the L.C.A. in this regard is that it is signed by the employee after discussing it with the employee so they completely understand for when they return. If the L.C.A. is not signed by the employer, then it is believed the employee is terminated.  The point is that this was never done here for Plaintiff which is alleged to be treating two similarly situated employees differently.

46.    On or about July 11, 2024, the same date Plaintiff had returned to work following leave, Plaintiff alleges Defendants were looking for a reason to penalize Plaintiff based on a pretext, in order to set Plaintiff up for termination upon Plaintiff's return.  However, Plaintiff was still never given the same type of corrective opportunity, a Last Chance Agreement, or an "L.C.A.," like Mr. Wansley was prior to Plaintiff's termination.  Instead, Plaintiff received the document attached hereto as Exhibit "C."  More specifically, Defendants allege Plaintiff failed to use the proper personal protective equipment, or "PPE."  Plaintiff denies that he was insubordinate by refusing to wear the requested PPE.  Plaintiff was not being insubordinate, he was explaining that he thought there was a policy that said that certain PPE could be removed if the temperature reached a certain level, and on the date in question, the temperature had reached that level.  Plaintiff further alleges he would not have been terminated on account of allegedly failing to wear the required PPE, the same being denied, but that Defendants pulled from the prior occurrence involving Mr. Wansley, where Plaintiff was discriminated against, to use as part of the reason to justify Plaintiff's termination.  Plaintiff was suspended on or about July 11, 2024, and terminated on July 15, 2024, and/or that his effective date of termination was July 15, 2024.  Plaintiff further alleges unusually suggestive temporal proximity.

47.     Plaintiff identifies pretext, inconsistent statements, and disparate treatment on account of the fact that Defendants allegedly posted a notice stating that certain PPE, specifically arm guards, could be removed if the temperature reached a certain level.  On the date in question, the temperature had reached that level. Plaintiff's supervisor did not explain the rule correctly to Plaintiff, and Plaintiff alleges his supervisor had discriminatory and/or retaliatory animus against Plaintiff due to his sexual orientation.  Plaintiff further alleges that other similarly situated employees were not treated the same in that they were not targeted for allegedly not wearing the required PPE, or that an occurrence of not wearing the required PPE would not have resulted in their termination, on account of the fact that the aforementioned notice stated that certain PPE could be removed if the temperature reached a certain level, and on the date in question, that the temperature had reached that level.

48.     Plaintiff lost pay on account of being terminated by Defendants.  Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

49.     Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

50.     Defendants' conduct toward Plaintiff  was in reckless disregard for Plaintiff's protected rights and Defendants are liable to Plaintiff for punitive damages to deter Defendants and future employers from similar misconduct in the future.

51.     Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic Corporation, Arconic US LLC, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT III:**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, *et seq.***
**(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)**

52.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

53.    Plaintiff experienced direct retaliation for his protected conduct/activity while employed by the Defendants.

54.    Plaintiff was suspended on or about July 11, 2024, and terminated on or about July 15, 2024, in retaliation for his protected conduct or activity.

55.    On or about June 16, 2024, a co-employee of Plaintiff named Mr. Jared Wansley, who is not believed or averred to be openly LGBTQ+, subjected Plaintiff to severe harassment based on Plaintiff's sex.  On or about June 16, 2024, Mr. Jared Wansley, subjected Plaintiff to harassment based on sex, sexual orientation, and/or sex stereotyping.  More specifically, Mr.

Wansley referred to Plaintiff as a "faggot" (hereinafter "f----t"), and stated for Plaintiff to "move the fucking (hereinafter "f-----g") crane."  Mr. Wansley also, at the same time, made an inappropriate hand gesture which Defendants subsequently characterized as, in Defendants' language, Mr. Wansley "flick[ing] his wrist" at Plaintiff, and "mock[ing] [Plaintiff] for being gay," which Defendants had reviewed on the camera footage.  Plaintiff engaged in protected conduct/activity when he promptly reported the aforementioned occurrence involving Mr. Wansley.  At the relevant time, the Defendants further characterized the alleged occurrence of harassment committed against Plaintiff as warranting alleged discipline or corrective opportunity/opportunities in the form of a Last Chance Agreement, or "L.C.A.," to Mr. Wansley, in lieu of his termination, on account of what Defendants represented was "the severity of the situation" for Mr. Wansley (*i.e.*, in Defendants' language, the "sever[e]" nature of the comments, as they have been characterized by Defendants, made to Plaintiff by Mr. Wansley).  *See* a true and correct copy of the alleged "Last Chance Agreement," or "L.C.A.," provided to Mr. Wansley, but which was not provided similarly to Plaintiff prior to Plaintiff's wrongful termination.  The occurrence is alleged to involve sex stereotyping.

56.     It should be noted that the aforementioned occurrence has not been the first time that Mr. Wansley subjected Plaintiff to alleged sexual harassment on the basis of his sexual orientation.  Mr. Wansley had also previously threatened Plaintiff that Mr. Wansley would allegedly "break your ass (hereinafter "a--") in half" referring to Plaintiff.

57.     Defendants elected to provide the aforementioned Last Chance Agreement ("L.C.A.") to one employee, and not the other.  It is alleged that Defendants subjected Plaintiff to disparate treatment and discriminated against him on account of his sexual orientation and/or his sex.

58.     The two (2) documents at issue, the L.C.A. provided to Mr. Wansley, and the document Defendants purport to be an L.C.A. provided to Plaintiff, but which document is not actually an L.C.A., are attached for this Court's consideration as Exhibits "B" and "C" hereto.

59.     The two documents at issue attached hereto as Exhibits "B" and "C" for this Court's consideration are clearly not the same type of document.  However, undersigned counsel is not imputing a misrepresentation to counsel for Defendants, but rather, it is believed the Defendants, and/or a representative on behalf of the Defendants, has misrepresented the fact that the two documents are both Last Chance Agreements, or L.C.A.s, when they both are not, only one is.  This is further alleged to be for the purpose of misrepresenting the fact that both employees were provided the same treatment, when they were not, or to be misleading about the fact that both of the employees did not receive the same treatment.  In other words, Defendants are saying the document attached hereto as Exhibit "C" is a Last Chance Agreement, or L.C.A., when it is not.  Defendants represented that they provided a Last Chance Agreement, or an L.C.A., to Plaintiff, when they did not.  Defendants are alleged to have not provided corrective opportunities to their employees including to Plaintiff and to other employees uniformly, are alleged to have not provided the same or similar corrective opportunities to Plaintiff and to other employees uniformly, and Defendants treated the comparator differently than Defendants treated the Plaintiff.

60.     Plaintiff further alleges pretext, that the aforementioned alleged representation, or alleged misrepresentation, constitutes pretext, or an inconsistent statement, as the Defendants are representing that the two documents are the same  in order to try to hide the fact of the disparate treatment, or to attempt to give the impression of similar treatment being given to both of the

employees, when actually the two documents are not the same, and the two employees did not receive the same treatment.

61.     The Last Chance Agreement, or "L.C.A.," is alleged to be a document that is given to an employee in lieu of a termination.  Defendants wanted to provide and did provide a Last Chance Agreement, "L.C.A.," to a bigoted individual, but not similarly to Plaintiff. Defendants wanted to provide and did provide a last chance to a bigoted individual, but not similarly to Plaintiff.  The touchstone for disparate treatment or for discrimination is the fact of two similarly situated individuals being treated differently based on a protected characteristic being the distinction.

62.     Plaintiff wishes to make several additional observations about the two different documents, the two different corrective opportunities, or about what makes them different.  For example, the L.C.A. provided to Mr. Wansley says that it replaces any prior disciplinary notice for the same occurrence, which Plaintiff did not similarly have replaced.  Plaintiff was treated differently by not having the disciplinary notice replaced by the L.C.A.

63.     The L.C.A. further states that the employee subject to the L.C.A. should sign the document, the superintendent (or, it is believed, the supervisor) should sign the document, and also that Human Resources, or a representative of the Human Resources ("HR") department, should sign the document, providing that last chance or opportunity, which was allegedly, upon information and belief, believed and therefore averred, not provided to Plaintiff.

64.     Plaintiff completely denies making a comment to Mr. Wansley that, were the two men not at work, Plaintiff would be capable of "beating [Mr. Wansley's] a--," or any words to that effect.  Plaintiff contends that a similar comment was actually made by Mr. Wansley on a prior occasion, that Mr. Wansley was going to "break [Plaintiff's] a-- in half," or words to that

effect.  Plaintiff alleges that Mr. Wansley made the allegation up about Plaintiff because of animus toward Plaintiff on account of his sexual orientation.  Plaintiff did not sign the disciplinary notice provided to him because Plaintiff denied making any such statement.  The point of the L.C.A. in this regard is that it is signed by the employee after discussing it with the employee so they completely understand for when they return. If the L.C.A. is not signed by the employer, then it is believed the employee is terminated.  The point is that this was never done here for Plaintiff which is alleged to be treating two similarly situated employees differently.

65.     On or about July 11, 2024, the same date Plaintiff had returned to work following leave, Plaintiff alleges Defendants were looking for a reason to penalize Plaintiff based on a pretext, in order to set Plaintiff up for termination upon Plaintiff's return.  However, Plaintiff was still never given the same type of corrective opportunity, a Last Chance Agreement, or an "L.C.A.," like Mr. Wansley was prior to Plaintiff's termination.  Instead, Plaintiff received the document attached hereto as Exhibit "C."  More specifically, Defendants allege Plaintiff failed to use the proper personal protective equipment, or "PPE."  Plaintiff denies that he was insubordinate by refusing to wear the requested PPE.  Plaintiff was not being insubordinate, he was explaining that he thought there was a policy that said that certain PPE could be removed if the temperature reached a certain level, and on the date in question, the temperature had reached that level.  Plaintiff further alleges he would not have been terminated on account of allegedly failing to wear the required PPE, the same being denied, but that Defendants pulled from the prior occurrence involving Mr. Wansley, where Plaintiff was discriminated against, to use as part of the reason to justify Plaintiff's termination.  Plaintiff was suspended on or about July 11, 2024, and terminated on July 15, 2024, and/or that his effective date of termination was July 15, 2024.  Plaintiff further alleges unusually suggestive temporal proximity.

66.     Plaintiff identifies pretext, inconsistent statements, and disparate treatment on account of the fact that Defendants allegedly posted a notice stating that certain PPE, specifically arm guards, could be removed if the temperature reached a certain level.  On the date in question, the temperature had reached that level. Plaintiff's supervisor did not explain the rule correctly to Plaintiff, and Plaintiff alleges his supervisor had discriminatory and/or retaliatory animus against Plaintiff due to his sexual orientation.  Plaintiff further alleges that other similarly situated employees were not treated the same in that they were not targeted for allegedly not wearing the required PPE, or that an occurrence of not wearing the required PPE would not have resulted in their termination, on account of the fact that the aforementioned notice stated that certain PPE could be removed if the temperature reached a certain level, and on the date in question, that the temperature had reached that level.

67.     Plaintiff lost pay on account of being terminated by Defendants.  Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

68.     Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

69.     Defendants' conduct toward Plaintiff  was in reckless disregard for Plaintiff's protected rights and Defendants are liable to Plaintiff for punitive damages to deter Defendants and future employers from similar misconduct in the future.

70.     Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT IV:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e,** *et seq.*
**(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)**

71.  All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

72.  Plaintiff was suspended on or about July 11, 2024, and terminated on or about July 15, 2024, in retaliation for his protected conduct or activity.

73.  On or about June 16, 2024, a co-employee of Plaintiff named Mr. Jared Wansley, who is not believed or averred to be openly LGBTQ+, subjected Plaintiff to severe harassment based on Plaintiff's sex.  On or about June 16, 2024, Mr. Jared Wansley, subjected Plaintiff to harassment based on sex, sexual orientation, and/or sex stereotyping.  More specifically, Mr. Wansley referred to Plaintiff as a "faggot" (hereinafter "f----t"), and stated for Plaintiff to "move the fucking (hereinafter "f-----g") crane."  Mr. Wansley also, at the same time, made an

inappropriate hand gesture which Defendants subsequently characterized as, in Defendants'
language, Mr. Wansley "flick[ing] his wrist" at Plaintiff, and "mock[ing] [Plaintiff] for being
gay," which Defendants had reviewed on the camera footage.  Plaintiff engaged in protected
conduct/activity when he promptly reported the aforementioned occurrence involving Mr.
Wansley.  At the relevant time, the Defendants further characterized the alleged occurrence of
harassment committed against Plaintiff as warranting alleged discipline or corrective
opportunity/opportunities in the form of a Last Chance Agreement, or "L.C.A.," to Mr. Wansley,
in lieu of his termination, on account of what Defendants represented was "the severity of the
situation" for Mr. Wansley (*i.e.*, in Defendants' language, the "sever[e]" nature of the comments,
as they have been characterized by Defendants, made to Plaintiff by Mr. Wansley).  *See* a true
and correct copy of the alleged "Last Chance Agreement," or "L.C.A.," provided to Mr.
Wansley, but which was not provided similarly to Plaintiff prior to Plaintiff's wrongful
termination.  The occurrence is alleged to involve sex stereotyping.

74.  It should be noted that the aforementioned occurrence has not been the first time that
Mr. Wansley subjected Plaintiff to alleged sexual harassment on the basis of his sexual
orientation.  Mr. Wansley had also previously threatened Plaintiff that Mr. Wansley would
allegedly "break your ass (hereinafter "a--") in half" referring to Plaintiff.

75.  Defendants elected to provide the aforementioned Last Chance Agreement
("L.C.A.") to one employee, and not the other.  It is alleged that Defendants subjected Plaintiff to
disparate treatment and discriminated against him on account of his sexual orientation and/or his
sex.

76.  The two (2) documents at issue, the L.C.A. provided to Mr. Wansley, and the document Defendants purport to be an L.C.A. provided to Plaintiff, but which document is not actually an L.C.A., are attached for this Court's consideration as Exhibits "B" and "C" hereto.

77.  The two documents at issue attached hereto as Exhibits "B" and "C" for this Court's consideration are clearly not the same type of document.  However, undersigned counsel is not imputing a misrepresentation to counsel for Defendants, but rather, it is believed the Defendants, and/or a representative on behalf of the Defendants, has misrepresented the fact that the two documents are both Last Chance Agreements, or L.C.A.s, when they both are not, only one is. This is further alleged to be for the purpose of misrepresenting the fact that both employees were provided the same treatment, when they were not, or to be misleading about the fact that both of the employees did not receive the same treatment.  In other words, Defendants are saying the document attached hereto as Exhibit "C" is a Last Chance Agreement, or L.C.A., when it is not. Defendants represented that they provided a Last Chance Agreement, or an L.C.A., to Plaintiff, when they did not.  Defendants are alleged to have not provided corrective opportunities to their employees including to Plaintiff and to other employees uniformly, are alleged to have not provided the same or similar corrective opportunities to Plaintiff and to other employees uniformly, and Defendants treated the comparator differently than Defendants treated the Plaintiff.

78.  Plaintiff further alleges pretext, that the aforementioned alleged representation, or alleged misrepresentation, constitutes pretext, or an inconsistent statement, as the Defendants are representing that the two documents are the same  in order to try to hide the fact of the disparate treatment, or to attempt to give the impression of similar treatment being given to both of the

employees, when actually the two documents are not the same, and the two employees did not receive the same treatment.

79.   The Last Chance Agreement, or "L.C.A.," is alleged to be a document that is given to an employee in lieu of a termination.  Defendants wanted to provide and did provide a Last Chance Agreement, "L.C.A.," to a bigoted individual, but not similarly to Plaintiff.  Defendants wanted to provide and did provide a last chance to a bigoted individual, but not similarly to Plaintiff.  The touchstone for disparate treatment or for discrimination is the fact of two similarly situated individuals being treated differently based on a protected characteristic being the distinction.

80.   Plaintiff wishes to make several additional observations about the two different documents, the two different corrective opportunities, or about what makes them different.  For example, the L.C.A. provided to Mr. Wansley says that it replaces any prior disciplinary notice for the same occurrence, which Plaintiff did not similarly have replaced.  Plaintiff was treated differently by not having the disciplinary notice replaced by the L.C.A.

81.   The L.C.A. further states that the employee subject to the L.C.A. should sign the document, the superintendent (or, it is believed, the supervisor) should sign the document, and also that Human Resources, or a representative of the Human Resources ("HR") department, should sign the document, providing that last chance or opportunity, which was allegedly, upon information and belief, believed and therefore averred, not provided to Plaintiff.

82.   Plaintiff completely denies making a comment to Mr. Wansley that, were the two men not at work, Plaintiff would be capable of "beating [Mr. Wansley's] a--," or any words to that effect.  Plaintiff contends that a similar comment was actually made by Mr. Wansley on a prior occasion, that Mr. Wansley was going to "break [Plaintiff's] a-- in half," or words to that

effect.  Plaintiff alleges that Mr. Wansley made the allegation up about Plaintiff because of

animus toward Plaintiff on account of his sexual orientation.  Plaintiff did not sign the

disciplinary notice provided to him because Plaintiff denied making any such statement.  The

point of the L.C.A. in this regard is that it is signed by the employee after discussing it with the

employee so they completely understand for when they return. If the L.C.A. is not signed by the

employer, then it is believed the employee is terminated.  The point is that this was never done

here for Plaintiff which is alleged to be treating two similarly situated employees differently.

83.  On or about July 11, 2024, the same date Plaintiff had returned to work following

leave, Plaintiff alleges Defendants were looking for a reason to penalize Plaintiff based on a

pretext, in order to set Plaintiff up for termination upon Plaintiff's return.  However, Plaintiff was

still never given the same type of corrective opportunity, a Last Chance Agreement, or an

"L.C.A.," like Mr. Wansley was prior to Plaintiff's termination.  Instead, Plaintiff received the

document attached hereto as Exhibit "C."  More specifically, Defendants allege Plaintiff failed to

use the proper personal protective equipment, or "PPE."  Plaintiff denies that he was

insubordinate by refusing to wear the requested PPE.  Plaintiff was not being insubordinate, he

was explaining that he thought there was a policy that said that certain PPE could be removed if

the temperature reached a certain level, and on the date in question, the temperature had reached

that level.  Plaintiff further alleges he would not have been terminated on account of allegedly

failing to wear the required PPE, the same being denied, but that Defendants pulled from the

prior occurrence involving Mr. Wansley, where Plaintiff was discriminated against, to use as part

of the reason to justify Plaintiff's termination.  Plaintiff was suspended on or about July 11,

2024, and terminated on July 15, 2024, and/or that his effective date of termination was July 15,

2024.  Plaintiff further alleges unusually suggestive temporal proximity.

84. Plaintiff identifies pretext, inconsistent statements, and disparate treatment on account of the fact that Defendants allegedly posted a notice stating that certain PPE, specifically arm guards, could be removed if the temperature reached a certain level. On the date in question, the temperature had reached that level. Plaintiff's supervisor did not explain the rule correctly to Plaintiff, and Plaintiff alleges his supervisor had discriminatory and/or retaliatory animus against Plaintiff due to his sexual orientation. Plaintiff further alleges that other similarly situated employees were not treated the same in that they were not targeted for allegedly not wearing the required PPE, or that an occurrence of not wearing the required PPE would not have resulted in their termination, on account of the fact that the aforementioned notice stated that certain PPE could be removed if the temperature reached a certain level, and on the date in question, that the temperature had reached that level.

85. Plaintiff lost pay on account of being terminated by Defendants. Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

86. Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

87. Defendants' conduct toward Plaintiff was in reckless disregard for Plaintiff's protected rights and Defendants are liable to Plaintiff for punitive damages to deter Defendants and future employers from similar misconduct in the future.

88. Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT V:**
**DISPARATE TREATMENT/DISCRIMINATION BASED ON SEXUAL ORIENTATION/SEX UNDER _MULDROW v. CITY OF ST. LOUIS, MISSOURI_, 601 U.S. ——, 144 S.Ct. 967, —— L.Ed.2d —— (2024), 42 U.S.C. § 2000_e_, _et seq._**
**(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)**

89.  All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

90.  The Supreme Court of the United States, in _Muldrow v. City of St. Louis, Missouri,_ 601 U.S. ——, 144 S.Ct. 967, —— L.Ed.2d —— (2024), established that a plaintiff may prevail in an employment discrimination action against their employer by alleging "some harm respecting an identifiable term or condition of employment." _Muldrow v. City of St. Louis, Missouri,_ 601 U.S. ——, 144 S.Ct. 967, 974, —— L.Ed.2d —— (2024).

91.  Plaintiff alleges an identifiable loss or harm committed by Defendants in the form of not providing Plaintiff the same corrective opportunity, the Last Chance Agreement, or the

"L.C.A.," that was provided to Mr. Wansley.  Plaintiff identifies this as discrimination pursuant to *Muldrow v. City of St. Louis, Missouri,* 601 U.S. ——, 144 S.Ct. 967, —— L.Ed.2d —— (2024).

92.  It is believed and therefore averred that a similarly situated employee, Mr. Wansley, received the Last Chance Agreement, or the "L.C.A.," in lieu of his termination, which is disparate treatment as Plaintiff was not provided the same document or the same corrective opportunity prior to his discharge.  While Defendants are expected to rely, at least in part, on the occurrence involving Mr. Wansley as part of the reason for the disciplinary action taken against *Plaintiff* prior to his termination, and as part of the reason to justify Plaintiff's termination upon Plaintiff's return to work, Plaintiff was not provided the same document or the same corrective opportunity, in the form of the "L.C.A," that Defendants provided to Mr. Wansley.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; and equitable/injunctive relief requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT VI:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION/SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT,**
**43 P.S. § 951, *et seq.***

**(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)**

93.   All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

94.   Defendants, at all times relevant hereto, employed four or more employees in the Commonwealth of Pennsylvania.

95.   Based on the foregoing, Plaintiff alleges Defendants violated the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, by discharging Plaintiff and subjecting him to discrimination based on his sexual orientation and his sex.

96.   On or about June 16, 2024, a co-employee of Plaintiff named Mr. Jared Wansley, who is not believed or averred to be openly LGBTQ+, subjected Plaintiff to severe harassment based on Plaintiff's sex.  On or about June 16, 2024, Mr. Jared Wansley, subjected Plaintiff to harassment based on sex, sexual orientation, and/or sex stereotyping.  More specifically, Mr. Wansley referred to Plaintiff as a "faggot" (hereinafter "f----t"), and stated for Plaintiff to "move the fucking (hereinafter "f-----g") crane."  Mr. Wansley also, at the same time, made an inappropriate hand gesture which Defendants subsequently characterized as, in Defendants' language, Mr. Wansley "flick[ing] his wrist" at Plaintiff, and "mock[ing] [Plaintiff] for being gay," which Defendants had reviewed on the camera footage.  Plaintiff engaged in protected conduct/activity when he promptly reported the aforementioned occurrence involving Mr. Wansley.   At the relevant time, the Defendants further characterized the alleged occurrence of harassment committed against Plaintiff as warranting alleged discipline or corrective opportunity/opportunities in the form of a Last Chance Agreement, or "L.C.A.," to Mr. Wansley, in lieu of his termination, on account of what Defendants represented was "the severity of the situation" for Mr. Wansley (*i.e.*, in Defendants' language, the "sever[e]" nature of the comments, as they have been characterized by Defendants,

made to Plaintiff by Mr. Wansley).  *See* a true and correct copy of the alleged "Last Chance Agreement," or "L.C.A.," provided to Mr. Wansley, but which was not provided similarly to Plaintiff prior to Plaintiff's wrongful termination.  The occurrence is alleged to involve sex stereotyping.

97.  It should be noted that the aforementioned occurrence has not been the first time that Mr. Wansley subjected Plaintiff to alleged sexual harassment on the basis of his sexual orientation. Mr. Wansley had also previously threatened Plaintiff that Mr. Wansley would allegedly "break your ass (hereinafter "a--") in half" referring to Plaintiff.

98.  Defendants elected to provide the aforementioned Last Chance Agreement ("L.C.A.") to one employee, and not the other.  It is alleged that Defendants subjected Plaintiff to disparate treatment and discriminated against him on account of his sexual orientation and/or his sex.

99.  The two (2) documents at issue, the L.C.A. provided to Mr. Wansley, and the document Defendants purport to be an L.C.A. provided to Plaintiff, but which document is not actually an L.C.A., are attached for this Court's consideration as Exhibits "B" and "C" hereto.

100. The two documents at issue attached hereto as Exhibits "B" and "C" for this Court's consideration are clearly not the same type of document.  However, undersigned counsel is not imputing a misrepresentation to counsel for Defendants, but rather, it is believed the Defendants, and/or a representative on behalf of the Defendants, has misrepresented the fact that the two documents are both Last Chance Agreements, or L.C.A.s, when they both are not, only one is. This is further alleged to be for the purpose of misrepresenting the fact that both employees were provided the same treatment, when they were not, or to be misleading about the fact that both of the employees did not receive the same treatment.  In other words, Defendants are saying the document attached hereto as Exhibit "C" is a Last Chance Agreement, or L.C.A., when it is not.

Defendants represented that they provided a Last Chance Agreement, or an L.C.A., to Plaintiff, when they did not.  Defendants are alleged to have not provided corrective opportunities to their employees including to Plaintiff and to other employees uniformly, are alleged to have not provided the same or similar corrective opportunities to Plaintiff and to other employees uniformly, and Defendants treated the comparator differently than Defendants treated the Plaintiff.

101. Plaintiff further alleges pretext, that the aforementioned alleged representation, or alleged misrepresentation, constitutes pretext, or an inconsistent statement, as the Defendants are representing that the two documents are the same  in order to try to hide the fact of the disparate treatment, or to attempt to give the impression of similar treatment being given to both of the employees, when actually the two documents are not the same, and the two employees did not receive the same treatment.

102. The Last Chance Agreement, or "L.C.A.," is alleged to be a document that is given to an employee in lieu of a termination.  Defendants wanted to provide and did provide a Last Chance Agreement, "L.C.A.," to a bigoted individual, but not similarly to Plaintiff.  Defendants wanted to provide and did provide a last chance to a bigoted individual, but not similarly to Plaintiff.  The touchstone for disparate treatment or for discrimination is the fact of two similarly situated individuals being treated differently based on a protected characteristic being the distinction.

103. Plaintiff wishes to make several additional observations about the two different documents, the two different corrective opportunities, or about what makes them different.  For example, the L.C.A. provided to Mr. Wansley says that it replaces any prior disciplinary notice for the same occurrence, which Plaintiff did not similarly have replaced.  Plaintiff was treated differently by not having the disciplinary notice replaced by the L.C.A.

104. The L.C.A. further states that the employee subject to the L.C.A. should sign the document, the superintendent (or, it is believed, the supervisor) should sign the document, and also that Human Resources, or a representative of the Human Resources ("HR") department, should sign the document, providing that last chance or opportunity, which was allegedly, upon information and belief, believed and therefore averred, not provided to Plaintiff.

105. Plaintiff completely denies making a comment to Mr. Wansley that, were the two men not at work, Plaintiff would be capable of "beating [Mr. Wansley's] a--," or any words to that effect. Plaintiff contends that a similar comment was actually made by Mr. Wansley on a prior occasion, that Mr. Wansley was going to "break [Plaintiff's] a-- in half," or words to that effect. Plaintiff alleges that Mr. Wansley made the allegation up about Plaintiff because of animus toward Plaintiff on account of his sexual orientation. Plaintiff did not sign the disciplinary notice provided to him because Plaintiff denied making any such statement. The point of the L.C.A. in this regard is that it is signed by the employee after discussing it with the employee so they completely understand for when they return. If the L.C.A. is not signed by the employer, then it is believed the employee is terminated. The point is that this was never done here for Plaintiff which is alleged to be treating two similarly situated employees differently.

106. On or about July 11, 2024, the same date Plaintiff had returned to work following leave, Plaintiff alleges Defendants were looking for a reason to penalize Plaintiff based on a pretext, in order to set Plaintiff up for termination upon Plaintiff's return. However, Plaintiff was still never given the same type of corrective opportunity, a Last Chance Agreement, or an "L.C.A.," like Mr. Wansley was prior to Plaintiff's termination. Instead, Plaintiff received the document attached hereto as Exhibit "C." More specifically, Defendants allege Plaintiff failed to use the proper personal protective equipment, or "PPE." Plaintiff denies that he was insubordinate

by refusing to wear the requested PPE. Plaintiff was not being insubordinate, he was explaining that he thought there was a policy that said that certain PPE could be removed if the temperature reached a certain level, and on the date in question, the temperature had reached that level. Plaintiff further alleges he would not have been terminated on account of allegedly failing to wear the required PPE, the same being denied, but that Defendants pulled from the prior occurrence involving Mr. Wansley, where Plaintiff was discriminated against, to use as part of the reason to justify Plaintiff's termination. Plaintiff was suspended on or about July 11, 2024, and terminated on July 15, 2024, and/or that his effective date of termination was July 15, 2024. Plaintiff further alleges unusually suggestive temporal proximity.

107. Plaintiff identifies pretext, inconsistent statements, and disparate treatment on account of the fact that Defendants allegedly posted a notice stating that certain PPE, specifically arm guards, could be removed if the temperature reached a certain level. On the date in question, the temperature had reached that level. Plaintiff's supervisor did not explain the rule correctly to Plaintiff, and Plaintiff alleges his supervisor had discriminatory and/or retaliatory animus against Plaintiff due to his sexual orientation. Plaintiff further alleges that other similarly situated employees were not treated the same in that they were not targeted for allegedly not wearing the required PPE, or that an occurrence of not wearing the required PPE would not have resulted in their termination, on account of the fact that the aforementioned notice stated that certain PPE could be removed if the temperature reached a certain level, and on the date in question, that the temperature had reached that level.

108. Plaintiff lost pay on account of being terminated by Defendants. Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

109. Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

110. Defendants' conduct toward Plaintiff  was in reckless disregard for Plaintiff's protected rights and Defendants are liable to Plaintiff for punitive damages to deter Defendants and future employers from similar misconduct in the future.

111. Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

### COUNT VII:
### HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON SEXUAL ORIENTATION/SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951, *et seq.*
### <u>(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)</u>

112. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

36

113. Defendants, at all times relevant hereto, employed four or more employees in the Commonwealth of Pennsylvania.

114. Based on the foregoing, Plaintiff alleges Defendants violated the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, by subjecting Plaintiff to a hostile work environment or harassment based on his sexual orientation and/or sex.  Defendants failed to provide appropriate action in response to the same.

115. Plaintiff lost pay on account of being terminated by Defendants.  Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

116. Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

117. Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for

all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT VIII:**
**RETALIATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT,**
**43 P.S. § 951, *et seq.***
**(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and**
**Arconic)**

118. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

119. Defendants, at all times relevant hereto, employed four or more employees in the Commonwealth of Pennsylvania.

120. Based on the foregoing, Plaintiff alleges Defendants violated the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, by suspending Plaintiff, and by terminating Plaintiff's employment, on account of his protected conduct/activity.

121. Plaintiff lost pay on account of being terminated by Defendants. Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

122. Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

123. Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay,

overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

## COUNT IX:
## RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT,
### 43 P.S. § 951, *et seq.*
### (Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)

124. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

125. Defendants, at all times relevant hereto, employed four or more employees in the Commonwealth of Pennsylvania.

126. Based on the foregoing, Plaintiff alleges Defendants violated the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, by suspending Plaintiff, and by terminating Plaintiff's employment, on account of his protected conduct/activity.

127. Plaintiff lost pay on account of being terminated by Defendants.  Plaintiff suffered past and future lost wages and lost earning capacity on account of Defendants' discriminatory acts against Plaintiff in violation of Title VII.

128. Plaintiff requests compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and severe emotional distress, on account of the Defendants' discriminatory acts against Plaintiff in violation of Title VII.

129. Plaintiff requests equitable/injunctive relief in the form of reinstatement to his former position with back pay.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

**COUNT X:**
**DISPARATE TREATMENT/DISCRIMINATION BASED ON SEXUAL ORIENTATION/SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951,** *et seq.*
**(Plaintiff, Keenan Woods v. Defendants, Arconic Corporation, Arconic US LLC, and Arconic)**

130. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

131. Defendants, at all times relevant hereto, employed four or more employees in the Commonwealth of Pennsylvania.

132. Based on the foregoing, Plaintiff alleges Defendants violated the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

133. The Supreme Court of the United States, in *Muldrow v. City of St. Louis, Missouri,* 601 U.S. ——, 144 S.Ct. 967, —— L.Ed.2d —— (2024), established that a plaintiff may prevail in

an employment discrimination action against their employer by alleging "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri,* 601 U.S. ——, 144 S.Ct. 967, 974, —— L.Ed.2d —— (2024).

134. Plaintiff alleges an identifiable loss or harm committed by Defendants in the form of not providing Plaintiff the same corrective opportunity, the Last Chance Agreement, or the "L.C.A.," that was provided to Mr. Wansley. Plaintiff identifies this as discrimination pursuant to *Muldrow v. City of St. Louis, Missouri,* 601 U.S. ——, 144 S.Ct. 967, —— L.Ed.2d —— (2024).

135. It is believed and therefore averred that a similarly situated employee, Mr. Wansley, received the Last Chance Agreement, or the "L.C.A.," in lieu of his termination, which is disparate treatment as Plaintiff was not provided the same document or the same corrective opportunity prior to his discharge. While Defendants are expected to rely, at least in part, on the occurrence involving Mr. Wansley as part of the reason for the disciplinary action taken against *Plaintiff* prior to his termination, and as part of the reason to justify Plaintiff's termination upon Plaintiff's return to work, Plaintiff was not provided the same document or the same corrective opportunity, in the form of the "L.C.A," that Defendants provided to Mr. Wansley.

**WHEREFORE**, Plaintiff, Keenan Woods, demands judgment in his favor and against Defendants, Arconic US LLC, Arconic Corporation, and Arconic, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to reinstate Plaintiff to his former position with back pay; requiring Defendants to conduct LGBTQ+ sensitivity training for

all employees; to provide a neutral employment reference for Plaintiff; and such other and further relief that this Court determines to be just, proper, and equitable.

## IV.
## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

DATED: <u>11/24/2025</u>          BY: _____
                                   Justin Robinette, Esquire
                                   PA Supreme Court I.D. No. 319829
                                   1650 Market St., Ste. 3600
                                   PMB # 2494
                                   Philadelphia, PA 19103
                                   Tel: (267) 595-6254
                                   Fax: (267) 592-3067
                                   <u>Justin@JRobinetteLaw.com</u>

                                   *Attorney for Plaintiff,*
                                   *Keenan Woods*

## **<u>VERIFICATION</u>**

I hereby certify that I am the Plaintiff in the within action, and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: 11/24/2025                    By:    _Keenan Woods_
Keenan Woods (Nov 24, 2025 18:12:44 EST)

Keenan Woods

## CERTIFICATE OF SERVICE

I, <u>JUSTIN F. ROBINETTE, ESQUIRE</u>, hereby certify that on this <u>24th</u> day of

<u>NOVEMBER</u>, <u>2025</u>, or as soon thereafter as service can be effectuated, I filed with the Court

electronically and caused to be served a true and correct copy of the foregoing document on the

following persons, and via the method, set forth below:

### *<u>VIA ELECTRONIC MAIL ONLY TO COUNSEL FOR DEFENDANTS WITH NOTICE OF</u>*

### *<u>LAWSUIT AND REQUEST TO WAIVE SERVICE OF SUMMONS</u>*

Taylor N. Brailey, Esquire
Littler Mendelson, P.C.,
One PPG Place,
Suite 2400,
Pittsburgh, Pennsylvania 15222,
<u>tbrailey@littler.com</u>

*Attorneys for Defendants*

Respectfully submitted,

DATED: <u>11/24/2025</u>          BY: _____

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
1650 Market St., Ste. 3600
PMB # 2494
Philadelphia, PA 19103
Tel: (267) 595-6254
Fax: (267) 592-3067
<u>Justin@JRobinetteLaw.com</u>

*Attorney for Plaintiff,*
*Keenan Woods*